JEFFREY D. WOHL (Cal. State Bar No. 096838)
RYAN D. DERRY (Cal. State Bar No. 244337)
ANNA M. SKAGGS (Cal. State Bar No. 319179)
JEFFREY G. BRIGGS (Cal. State Bar No. 323790)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
ryanderry@paulhastings.com
annaskaggs@paulhastings.com
jeffreybriggs@paulhastings.com

Attorneys for Defendant
Target Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AISHA BOWEN, an individual on behalf of herself and all others similarly situated; ANKE McCREA, an individual on behalf of herself and all others similarly situated; CHENEICE ROBERSON, an individual on behalf of herself and all others similarly situated; STACEY WILLIAMS, an individual on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TARGET CORPORATION; a Minnesota corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:16-CV-02587-JGB-MRW<br><br>**DEFENDANT TARGET CORPORATION'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS ON-PREMISES REST-PERIOD THEORY OF PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date: January 27, 2020<br>Time: 9:00 a.m.<br>Courtroom: 1 (3470 Twelfth St., Riverside)<br>Judge: Hon. Jesus G. Bernal |

Defendant Target Corporation ("Target") respectfully requests that the Court take judicial notice, pursuant to Rule 201, Federal Rules of Evidence, of the following official records in support of Target's motion to dismiss the on-premises rest-period theory of plaintiffs' Second Amended Complaint:

1.  Cal. Dep't of Indus. Relations, *Rest Periods/Lactation Accommodation*, https://web.archive.org/web/20171101172425/https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm (last visited Nov. 1, 2017), a true and correct copy of which is attached to this request as Exhibit A.  *See also Hubbs v. Big Lots Stores, Inc.*, No. LACV1501601JAKASX, 2018 WL 5264141, at *4 (C.D. Cal. Mar. 16, 2018).

2.  *Lopes v. Kohl's Department Stores*, Alameda Cnty. Sup. Ct. No. RG08380189 (Feb. 18, 2017), a true and correct copy of which is attached to this request as Exhibit B.

3.  Cal. Dep't of Indus. Relations, *Rest Periods/Lactation Accommodation*, https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm (last visited Dec. 16, 2019), a true and correct copy of which is attached to this request as Exhibit C.

4.  *McRae v. SP Plus Security Services, Inc.*, Los Angeles Cnty. Super. Ct. No. BC550147 (Apr. 18, 2018), a true and correct copy of which is attached to this request as Exhibit D.

Rule 201(b), Federal Rules of Evidence, permits judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Pursuant to this rule, a court may take judicial notice of legislative history, regulations and agency interpretations, matters of public records, and court proceedings. *See Cardenas v. McLane Foodservices, Inc.*, 796 F. Supp. 2d 1246, 1251, n.2 (C.D. Cal. 2011) (taking judicial notice of Division of Labor Standards Enforcement opinion letter); *Brown v. Valoff*, 422 F.3d 926, 931, 933 n. 7, 9 (9th Cir. 2005) (taking judicial notice of California Department of Corrections' Operations Manual and Administrative Bulletin as

"record[s] of state agency not subject to reasonable dispute") (citation omitted); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of proceedings before California Superior Court where directly related to and potentially dispositive on pending issues).

Based upon the foregoing, Target respectfully requests that the Court take judicial notice of the documents listed above and attached to this request.

Dated:  December 17, 2019.    JEFFREY D. WOHL
RYAN D. DERRY
ANNA M. SKAGGS
JEFFREY G. BRIGGS
PAUL HASTINGS LLP


By: _____/s/ *Jeffrey D. Wohl*_____
Jeffrey D. Wohl
Attorneys for Defendant
Target Corporation

# EXHIBIT A

**State of California**
# Department of Industrial Relations

Labor Commissioner's Office   |   Rest Periods/Lactation Accommodation

# Rest Periods/Lactation Accommodation

Revised 3/04/11

In California, the Industrial Welfare Commission Wage Orders require that employers must authorize and permit nonexempt employees to take a rest period that must, insofar as practicable, be taken in the middle of each work period. The rest period is based on the total hours worked daily and must be at the minimum rate of a net ten consecutive minutes for each four hour work period, or major fraction thereof. The Division of Labor Standards Enforcement (DLSE) considers anything more than two hours to be a "major fraction" of four." A rest period is not required for employees whose total daily work time is less than three and one-half hours. The rest period is counted as time worked and therefore, the employer must pay for such periods. Since employees are paid for their rest periods, they can be required to remain on the employer's premises during such periods. With respect to the taking of rest periods, an exception exists under IWC Order 5-2001, Section 12(C) for certain employees of 24-hour residential care facilities who may have their rest period limited under certain circumstances. Another exception to the general rest period requirement is for swimmers, dancers, skaters, and other performers engaged in strenuous physical activities who shall have additional interim rest periods during periods of actual rehearsal or shooting. IWC Order 12-2001, Section 12 (C).

For employees in certain on-site occupations in the construction, drilling, logging and mining industries, the employer may stagger the rest periods to avoid interruption in the flow of work and to maintain continuous operations, or schedule rest periods to coincide with breaks in the flow of work that occur in the course of the workday. IWC Order 16-2001, Section 11(A) Additionally, for these employees rest periods need not be authorized in limited circumstances when the disruption of continuous operations would jeopardize the product or process of the work. However, under such circumstances, the employer must make-up the missed rest period within the same workday or compensate the employee for the missed ten minutes of rest time at his or her regular rate of pay within the same pay period. IWC Order 16-2001, Section 11(B) Under Order 16-2001, rest periods must take place at employer designated areas which may include or be limited to the employees immediate work area. See Question No. 9, below, for information on how to file a claim to require your employer to provide time and a place to express milk.

Under IWC Order 10-2001, Section12(C), a crew member employed on a commercial passenger fishing boat who is on an overnight trip shall receive no less than eight hours off-duty time during each 24-hour period. This eight-hour period is in addition to the meal and rest periods required under the Wage Order.

Pursuant to Labor Code Section 1030 every employer, including the state and any political subdivision, must provide a reasonable amount of break time to accommodate an employee desiring to express breast milk for the employee's infant child. The break time shall, if possible, run concurrently with any break time already provided to the employee. Break time for an employee that does not run concurrently with the rest time authorized for the employee by the applicable wage order of the Industrial Welfare Commission need not be paid. The employer shall make reasonable efforts to provide the employee with the use of a room or other location, other than a toilet

stall, in close proximity to the employee's work area, for the employee to express milk in private. The room or location may include the place where the employee normally works if it otherwise meets the requirements of this section. An employer is not required to provide an employee break time for purposes of lactating if to do so would seriously disrupt the operations of the employer. Lactation Accommodation-Labor Code translation-Spanish

If an employer fails to provide an employee a rest period in accordance with an applicable IWC Order, the employer shall pay the employee one additional hour of pay at the employee's regular rate of pay for each workday that the rest period is not provided. Labor Code Section 226.7 Thus, if an employer does not provide all of the rest periods required in a workday, the employee is entitled to one additional hour of pay for that workday, not one additional hour of pay for each rest period that was not provided during that workday.

The rest period is defined as a "net" ten minutes, which means that the rest period begins when the employee reaches an area away from the work area that is appropriate for rest. Employers are required to provide suitable resting facilities that shall be available for employees during working hours in an area separate from the toilet rooms.

1.  **Q.** **What are the basic requirements for rest periods under California law?**

    **A.** Employers of California employees covered by the rest period provisions of the Industrial Welfare Commission Wage Orders must authorize and permit a net 10-minute paid rest period for every four hours worked or major fraction thereof. Insofar as is practicable, the rest period should be in the middle of the work period. If an employer does not authorize or permit a rest period, the employer shall pay the employee one hour of pay at the employee's regular rate of pay for each workday that the rest period is not provided.

2.  **Q.** **Must the rest periods always be in the middle of each four-hour work period?**

    **A.** Rest breaks must be given as close to the middle of the four-hour work period as is practicable. If the nature or circumstances of the work prevent the employer from giving the break at the preferred time, the employee must still receive the required break, but may take it at another point in the work period.

3.  **Q.** **My employer is not allowing me to take a rest period. Is there anything I can do about this situation?**

    **A.** Yes, there is something you can do if you are an employee covered by the rest period requirements of the Industrial Welfare Commission Wage Orders. If your employer fails to authorize and permit the required rest period(s), you are to be paid one hour of pay at your regular rate of compensation for each workday that the rest period is not authorized or permitted. If your employer fails to pay the additional one-hour's pay, you may file a wage claim with the Division of Labor Standards Enforcement.

4.  **Q.** **Is it permissible if I choose to work through both of my rest periods so that I can leave my job 20 minutes early?**

    **A.** No, working through your rest period does not entitle you to leave work early or arrive late.

5.  **Q.** **Can my employer require that I stay on the work premises during my rest period?**

    **A.** Yes, your employer can require that you stay on the premises during your rest break. Since you are being compensated for the time during your rest period, your employer can require that you remain on its premises. And under most situations, the employer is required to provide suitable resting facilities that shall be available for employees during working hours in an area separate from the toilet rooms.

6. **Q.** Can I have additional rest breaks if I am a smoker?

   **A.** No, under California law rest period time is based on the total hours worked daily, and only one ten-minute rest period need be authorized for every four hours of work or major fraction thereof.

7. **Q.** When I need to use the toilet facilities during my work period does that count as my ten minute rest break?

   **A.** No, the 10-minute rest period is not designed to be exclusively for use of toilet facilities as evidenced by the fact that the Industrial Welfare Commission requires suitable resting facilities be in an area "separate from toilet rooms." The intent of the Industrial Welfare Commission regarding rest periods is clear: the rest period is not to be confused with or limited to breaks taken by employees to use toilet facilities. This conclusion is required by a reading of the provisions of IWC Orders, Section 12, Rest Periods, in conjunction with the provisions of Section 13(B), Change Rooms And Resting Facilities, which requires that "Suitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours."

   Allowing employees to use toilet facilities during working hours does not meet the employer's obligation to provide rest periods as required by the IWC Orders. This is not to say, of course, that employers do not have the right to reasonably limit the amount of time an employee may be absent from his or her work station; and, it does not indicate that an employee who chooses to use the toilet facilities while on an authorized break may extend the break time by doing so. DLSE policy simply prohibits an employer from requiring that employees count any separate use of toilet facilities as a rest period.

8. **Q.** I am regularly scheduled to work an eight-hour shift. What can I do if my employer doesn't allow me to take a rest break?

   **A.** You can either file a wage claim (the Labor Commissioner's Office), or you can file a lawsuit in court against your employer to recover the premium of one additional hour of pay at your regular rate of compensation for each workday that the rest period is not provided.

9. **Q.** What happens if my employer does not provide me with the opportunity to take a break for lactation purposes?

   **A.** If you feel your employer is not providing you with adequate break time and/or a place to express milk as provided for in Labor Code section 1030, you may file a report/claim with the DLSE Bureau of Field Enforcement (BOFE) at the BOFE office nearest your place of employment.  See http://www.dir.ca.gov/dlse/HowToReportViolationtoBOFE.htm.

   The DLSE may, after an inspection, issue to an employer who violates any provision of this chapter, a civil citation ($100.00 for each violation) that may be contested in accordance with the procedure outlined in Labor Code Section 1197.1 (Labor Code Section 1033).

   In addition, any employee who is a victim of retaliation for either asserting a right to lactation accommodation or for complaining to the DLSE about the failure of an employer to provide this accommodation may file a retaliation claim with DLSE pursuant to Labor Code Section 98.7 .

10. **Q.** What is the applicable statute of limitations on filing a rest period claim?

    **A.** In the case of Murphy v. Cole, the California Supreme Court held that the remedy for meal and rest period

violations of "one additional hour of pay" under Labor Code section 226.7 is a wage subject to a three-year statute of limitations. Accordingly, a claim must be filed within three (3) years of the alleged rest period violation. See attached Division memoranda regarding the Court's decision.

**11. Q. What is the procedure that is followed after I file a wage claim?**

A. After your claim is completed and filed with a local office of the Division of Labor Standards Enforcement (DLSE), it will be assigned to a Deputy Labor Commissioner who will determine, based upon the circumstances of the claim and information presented, how best to proceed. Initial action taken regarding the claim can be referral to a conference or hearing, or dismissal of the claim.

If the decision is to hold a conference, the parties will be notified by mail of the date, time and place of the conference. The purpose of the conference is to determine the validity of the claim, and to see if the claim can be resolved without a hearing. If the claim is not resolved at the conference, the next step usually is to refer the matter to a hearing or dismiss it for lack of evidence.

At the hearing the parties and witnesses testify under oath, and the proceeding is recorded. After the hearing, an Order, Decision, or Award (ODA) of the Labor Commissioner will be served on the parties.

Either party may appeal the ODA to a civil court of competent jurisdiction. The court will set the matter for trial, with each party having the opportunity to present evidence and witnesses. The evidence and testimony presented at the Labor Commissioner's hearing will not be the basis for the court's decision. In the case of an appeal by the employer, DLSE may represent an employee who is financially unable to afford counsel in the court proceeding.

See the Policies and Procedures of Wage Claim Processing pamphlet for more detail on the wage claim procedure.

**12. Q. What can I do if I prevail at the hearing and the employer doesn't pay or appeal the Order, Decision, or Award?**

A. When the Order, Decision, or Award (ODA) is in the employee's favor and there is no appeal, and the employer does not pay the ODA, the Division of Labor Standards Enforcement (DLSE) will have the court enter the ODA as a judgment against the employer. This judgment has the same force and effect as any other money judgment entered by the court. Consequently, you may either try to collect the judgment yourself or you can assign it to DLSE.

**13. Q. What can I do if my employer retaliates against me because I objected to the fact that he doesn't provide employees with rest breaks?**

A. If your employer discriminates or retaliates against you in any manner whatsoever, for example, he discharges you because you object to the fact that he's not providing employees with rest breaks, or because you file a claim or threaten to file a claim with the Labor Commissioner, you can file a discrimination/retaliation complaint with the Labor Commissioner's Office. In the alternative, you can file a lawsuit in court against your employer.

## File a Claim

Wage claims

Bureau of Field Enforcement

Public works complaints

Claims for retaliation or discrimination

## More Services

Public records requests

Translations

Verify a license or registration

Find a wage order

Online payments

Haga un pago en lÃnea

## Learn more about DLSE

Frequently asked questions

Archives

DLSE site map

Workplace postings

Legislative reports

---

Labor Commissioner's Office

---

## Quick Links

Bureau of Field Enforcement

Wage Claim Adjudication

Retaliation (RCI)

Permits, Licenses, Certifications, and Registrations

Public Works

Electrician Certification Unit

Frequently asked questions

Legislative reports

Labor Commissioner's Databases

Private Attorney General Act (PAGA)

---

Resources

Frequently asked questions

Labor Commissioner's Databases

Legislative reports

Publications

Forms

---

## About DLSE

---

About Us

Locations, Contacts, and Hours of Operation

Jobs at DIR



You can **pay your bill online**.
Need to make a payment?
( Haga un pago en línea. )

### About DIR

Who we are

DIR Divisions, Boards & Commissions

Contact DIR

### Work with Us

Jobs at DIR

Licensing, registrations, certifications & permits

Required Notifications

Public Records Requests

### Learn More

Acceso al idioma

Frequently Asked Questions

Site Map

  

Site Feedback

Back to Top

Privacy Policy

Disability Accommodation

Conditions of Use

Disclaimer

Standard Browser Usability Features

Site Help

Copyright © 2017 State of California

# EXHIBIT B

Capstone Law APC
Attn: Witte, Alexandria
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, CA   90067____

Manning & Kass, Ellrod, Ramirez,
Trester LLP
Attn: Serafini Esq, Evelina M.
801 S Figueroa Street
15th Floor at 801 Tower
Los Angeles, CA   90017____

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Lopes<br><br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>Kohl's Department Stores<br><br>◗Defendant/Respondent(s)<br>(Abbreviated Title) | No. <u>RG08380189</u><br><br>Order<br><br>Motion for Reconsideration<br>Denied |

The Motion for Reconsideration filed for Nicole Lopes was set for hearing on 02/17/2017 at 09:00 AM in Department 1C before the Honorable Wynne Carvill. The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

On February 17, 2017, Plaintiffs' Renewed Motion for Summary Judgment and/or Motion for Reconsideration of Certified On-Site Rest Period Claim, Overnight Meal Period Claim and Derivative Claims ("Motion") came on for hearing. The Motion is based on the alleged change of law reflected in Augustus v. ABM Security Systems, Inc. (2016) 2 Cal.5th 257 ("Augustus") and Lubin v. Wackenhut (2016) 5 Cal.App.5th 926 ("Lubin"). Appearances are reflected in the minutes.

The principal problem with the first ground for the Motion is that Augustus recognized the difference between "on call" and "on premises" - concepts which Plaintiffs conflate in their argument. In Augustus the rest period was considered "work" because the employees were "on call" and required to carry a phone or similar device, answer it and respond to calls that might well interrupt their breaks. That is not the case with an onsite rest break that does not impose any duties on the employee taking the break. Plaintiffs argue nevertheless that Augustus contains broad language on the meaning of "control," and that language encompasses the requirement that an employee remain onsite. While there are passages that may support that argument, the court concludes that the following passage in the decision is dispositive:

"Because rest periods are 10 minutes in length (Wage Order 4, subd. 12(A)), they impose practical limitations on an employee's movement. That is, during a rest period an employee generally can travel at most five minutes from a work post before returning to make it back on time. Thus, one would expect that employees will ordinarily have to remain onsite or nearby. This constraint, which is of course common to all rest periods, is not sufficient to establish employer control." (2 Cal.5th 257, 270.)

The court rejects the argument that, by formalizing this "common" constraint in a rule, the employer is exercising sufficient "control" to render the break "work," especially in the context of this record where it is undisputed that there were break rooms, smoking areas and the like such that employees who want to exercise their right to a "break" could do so. As noted in the original decision, this analysis is also consistent with the DLSE's FAQ position regarding onsite rest breaks.

With respect to the Lubin case, that was an order on class certification and thus does not bear directly on the summary judgment issue previously addressed in this case. For example, an issue may be sufficiently common to all putative class members so as to warrant certification but ultimately result in summary adjudication for the defense. Plaintiffs argue that, while the procedural context may differ, a case nonetheless may enunciate a rule or principle that would constitute a change in the law relied upon in an earlier summary judgment. The court agrees but does not believe that Lubin states a new rule or principle. Rather it applied existing law to the allegation that defendant allowed clients to determine whether the nature of the work prevents an employee from being relieved of all duty. (5 Cal.App.5th at 946-947.) The court ruled that one could determine on a class-wide basis whether "client preference" to provide on- or off-duty meal periods was a policy that could satisfy the DLSE factors. That holding does not undermine this court's prior ruling.

That said, the court acknowledges that Plaintiffs do argue that this court got it wrong when it ruled for the defense on its nature of the work rationale. But Plaintiffs' arguments in this regard do not depend on Lubin but simply revisit the arguments presented two years ago. If that were to be permitted, the court might as well simply have the parties re-brief all the issues presented to date at the various procedural stages.

The Motion is thus DENIED.


Dated:  02/18/2017

_Wyn ~ S. Carvill_
Digital
_____
Judge Wynne Carvill

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Lopes VS Kohl's Department Stores | RG08380189 |

ADDITIONAL ADDRESSEES

Liner Yankelevitz Sunshine & Regenstreif
LLP
Attn:  Perez, Raul
1800 Century Park East
14th Floor
Los Angeles, CA    90067____

Littler Mendelson PC
Attn:  Lilly, J Kevin
2049 Century Park East
5th Floor
Los Angeles, CA    90067-3107

Goldstein,Borgen,Dardarian & Ho
Attn:  Ho, Laura L
300 Lakeside Drive
Ste 1000
Oakland, CA    94612____

Manning & Kass Ellrod Ramirez Trester
LLP
Attn:  DeLaCruz Esq, Alfred
550 West "C" Street
Suite 1900
San Diego, CA    92101

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number: RG08380189
Order After Hearing Re: of 02/18/2017

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed on 03/17/2017.

Chad Finke  Executive Officer / Clerk of the Superior Court

By _____
                                                                    Deputy Clerk

# EXHIBIT C



# Department of
# Industrial Relations

## Rest Periods/Lactation Accommodation

In California, the Industrial Welfare Commission Wage Orders require that employers must authorize and permit nonexempt employees to take a rest period that must, insofar as practicable, be taken in the middle of each work period. The rest period is based on the total hours worked daily and must be at the minimum rate of a net ten consecutive minutes for each four hour work period, or major fraction thereof. The Division of Labor Standards Enforcement (DLSE) considers anything more than two hours to be a "major fraction" of four." A rest period is not required for employees whose total daily work time is less than three and one-half hours. The rest period is counted as time worked and therefore, the employer must pay for such periods. With respect to the taking of rest periods, an exception exists under IWC Order 5-2001, Section 12(C) for certain employees of 24-hour residential care facilities who may have their rest period limited under certain circumstances. Another exception to the general rest period requirement is for swimmers, dancers, skaters, and other performers engaged in strenuous physical activities who shall have additional interim rest periods during periods of actual rehearsal or shooting. IWC Order 12-2001, Section 12 (C).

For employees in certain on-site occupations in the construction, drilling, logging and mining industries, the employer may stagger the rest periods to avoid interruption in the flow of work and to maintain continuous operations, or schedule rest periods to coincide with breaks in the flow of work that occur in the course of the workday. IWC Order 16-2001, Section 11(A) Additionally, for these employees rest periods need not be authorized in limited circumstances when the disruption of continuous operations would jeopardize the product or process of the work. However, under such circumstances, the employer must make-up the missed rest period within the same workday or compensate the employee for the missed ten minutes of rest time at his or her regular rate of pay within the same pay period. IWC Order 16-2001, Section 11(B) Under Order 16-2001, rest periods must take place at employer designated areas which may include or be limited to the employees immediate work area. See Question No. 9, below, for information on how to file a claim to require your employer to provide time and a place to express milk.

Under IWC Order 10-2001, Section12(C), a crew member employed on a commercial passenger fishing boat who is on an overnight trip shall receive no less than eight hours off-duty time during each 24-hour period. This eight-hour period is in addition to the meal and rest periods required under the Wage Order.

Pursuant to Labor Code Section 1030 every employer, including the state and any political subdivision, must provide a reasonable amount of break time to accommodate an employee desiring to express breast milk for the employee's infant child. The break time shall, if possible, run concurrently with any break time already provided to the employee. Break time for an employee that does not run concurrently with the rest time authorized for the employee by the applicable wage order of the Industrial Welfare Commission need not be paid. The employer shall make reasonable efforts to provide the employee with the use of a room or other location, other than a toilet stall, in close proximity to the employee's work area, for the employee to express

milk in private. The room or location may include the place where the employee normally works if it otherwise meets the requirements of this section. An employer is not required to provide an employee break time for purposes of lactating if to do so would seriously disrupt the operations of the employer. Lactation Accommodation-Labor Code translation-Spanish

If an employer fails to provide an employee a rest period in accordance with an applicable IWC Order, the employer shall pay the employee one additional hour of pay at the employee's regular rate of pay for each workday that the rest period is not provided. Labor Code Section 226.7 Thus, if an employer does not provide all of the rest periods required in a workday, the employee is entitled to one additional hour of pay for that workday, not one additional hour of pay for each rest period that was not provided during that workday.

The rest period is defined as a "net" ten minutes, which means that the rest period begins when the employee reaches an area away from the work area that is appropriate for rest. Employers are required to provide suitable resting facilities that shall be available for employees during working hours in an area separate from the toilet rooms.

1. **Q.What are the basic requirements for rest periods under California law?**

   A. Employers of California employees covered by the rest period provisions of the Industrial Welfare Commission Wage Orders must authorize and permit a net 10-minute paid rest period for every four hours worked or major fraction thereof. Insofar as is practicable, the rest period should be in the middle of the work period. If an employer does not authorize or permit a rest period, the employer shall pay the employee one hour of pay at the employee's regular rate of pay for each workday that the rest period is not provided.

2. **Q.Must the rest periods always be in the middle of each four-hour work period?**

   A. Rest breaks must be given as close to the middle of the four-hour work period as is practicable. If the nature or circumstances of the work prevent the employer from giving the break at the preferred time, the employee must still receive the required break, but may take it at another point in the work period.

3. **Q.My employer is not allowing me to take a rest period. Is there anything I can do about this situation?**

   A. Yes, there is something you can do if you are an employee covered by the rest period requirements of the Industrial Welfare Commission Wage Orders. If your employer fails to authorize and permit the required rest period(s), you are to be paid one hour of pay at your regular rate of compensation for each workday that the rest period is not authorized or permitted. If your employer fails to pay the additional one-hour's pay, you may file a wage claim with the Division of Labor Standards Enforcement.

4. **Q.Is it permissible if I choose to work through both of my rest periods so that I can leave my job 20 minutes early?**

   A. No, working through your rest period does not entitle you to leave work early or arrive late.

5. **Q.Can my employer require that I stay on the work premises during my rest period?**

A. No, your employer cannot impose any restraints not inherent in the rest period requirement itself. In Augustus v. ABM Security Services, Inc., (2016) 5 Cal.5th 257, 269, the California Supreme Court held that the rest period requirement "obligates employers to permit-and authorizes employees to take-off-duty rest periods. That is, during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time." (citation omitted) As a practical matter, however, if an employee is provided a ten minute rest period, the employee can only travel five minutes from a work post before heading back to return in time.

6.  Q. Can an employer require that you keep in radio communication on a rest period?

A. No, the court in *Augustus* also held that on-call rest periods are prohibited. .  "[O]ne cannot square the practice of compelling employees to remain at the ready, tethered by time and policy to particular locations or communications devices, with the requirement to relieve employees of all work duties and employer control during 10-minute rest periods." *Augustus v. ABM Security Services, Inc.,* (2016) 5 Cal.5th 257, 269.   This court's determination is unique to rest period on-call time and does not apply to other types of on-call issues such as on-call shifts or on-call meal periods, which are subject to different requirements and considerations.

7.  Q. Can I have additional rest breaks if I am a smoker?

A. No, under California law rest period time is based on the total hours worked daily, and only one ten-minute rest period need be authorized for every four hours of work or major fraction thereof.

8.  Q. When I need to use the toilet facilities during my work period does that count as my ten minute rest break?

A. No, the 10-minute rest period is not designed to be exclusively for use of toilet facilities as evidenced by the fact that the Industrial Welfare Commission requires suitable resting facilities be in an area "separate from toilet rooms." The intent of the Industrial Welfare Commission regarding rest periods is clear: the rest period is not to be confused with or limited to breaks taken by employees to use toilet facilities. This conclusion is required by a reading of the provisions of IWC Orders, Section 12, Rest Periods, in conjunction with the provisions of Section 13(B), Change Rooms And Resting Facilities, which requires that "Suitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours."

Allowing employees to use toilet facilities during working hours does not meet the employer's obligation to provide rest periods as required by the IWC Orders. This is not to say, of course, that employers do not have the right to reasonably limit the amount of time an employee may be absent from his or her work station; and, it does not indicate that an employee who chooses to use the toilet facilities while on an authorized break may extend the break time by doing so. DLSE policy simply prohibits an employer from requiring that employees count any separate use of toilet facilities as a rest period.

9.  Q. I am regularly scheduled to work an eight-hour shift. What can I do if my employer doesn't allow me to take a rest break?

A. You can either file a wage claim (the Labor Commissioner's Office), or you can file a lawsuit in court

against your employer to recover the premium of one additional hour of pay at your regular rate of compensation for each workday that the rest period is not provided.

**10. Q. What happens if my employer does not provide me with the opportunity to take a break for lactation purposes?**

A. If you feel your employer is not providing you with adequate break time and/or a place to express milk as provided for in Labor Code section 1030, you may file a report/claim with the DLSE Bureau of Field Enforcement (BOFE) at the BOFE office nearest your place of employment.  See http://www.dir.ca.gov/dlse/HowToReportViolationtoBOFE.htm.

The DLSE may, after an inspection, issue to an employer who violates any provision of this chapter, a civil citation ($100.00 for each violation) that may be contested in accordance with the procedure outlined in Labor Code Section 1197.1 (Labor Code Section 1033).

In addition, any employee who is a victim of retaliation for either asserting a right to lactation accommodation or for complaining to the DLSE about the failure of an employer to provide this accommodation may file a retaliation claim with DLSE pursuant to Labor Code Section 98.7 .

**11. Q. What is the applicable statute of limitations on filing a rest period claim?**

A. In the case of Murphy v. Cole, the California Supreme Court held that the remedy for meal and rest period violations of "one additional hour of pay" under Labor Code section 226.7 is a wage subject to a three-year statute of limitations. Accordingly, a claim must be filed within three (3) years of the alleged rest period violation. See attached Division memoranda regarding the Court's decision.

**12. Q. What is the procedure that is followed after I file a wage claim?**

A. After your claim is completed and filed with a local office of the Division of Labor Standards Enforcement (DLSE), it will be assigned to a Deputy Labor Commissioner who will determine, based upon the circumstances of the claim and information presented, how best to proceed. Initial action taken regarding the claim can be referral to a conference or hearing, or dismissal of the claim.

If the decision is to hold a conference, the parties will be notified by mail of the date, time and place of the conference. The purpose of the conference is to determine the validity of the claim, and to see if the claim can be resolved without a hearing. If the claim is not resolved at the conference, the next step usually is to refer the matter to a hearing or dismiss it for lack of evidence.

At the hearing the parties and witnesses testify under oath, and the proceeding is recorded. After the hearing, an Order, Decision, or Award (ODA) of the Labor Commissioner will be served on the parties.

Either party may appeal the ODA to a civil court of competent jurisdiction. The court will set the matter for trial, with each party having the opportunity to present evidence and witnesses. The evidence and testimony presented at the Labor Commissioner's hearing will not be the basis for the court's decision. In the case of an appeal by the employer, DLSE may represent an employee who is financially unable to afford counsel in the court proceeding.

See the Policies and Procedures of Wage Claim Processing pamphlet for more detail on the wage claim procedure.

**13. Q. What can I do if I prevail at the hearing and the employer doesn't pay or appeal the Order, Decision, or Award?**

A. When the Order, Decision, or Award (ODA) is in the employee's favor and there is no appeal, and the employer does not pay the ODA, the Division of Labor Standards Enforcement (DLSE) will have the court enter the ODA as a judgment against the employer. This judgment has the same force and effect as any other money judgment entered by the court. Consequently, you may either try to collect the judgment yourself or you can assign it to DLSE.

**14. Q. What can I do if my employer retaliates against me because I objected to the fact that he doesn't provide employees with rest breaks?**

A. If your employer discriminates or retaliates against you in any manner whatsoever, for example, he discharges you because you object to the fact that he's not providing employees with rest breaks, or because you file a claim or threaten to file a claim with the Labor Commissioner, you can file a discrimination/retaliation complaint with the Labor Commissioner's Office. In the alternative, you can file a lawsuit in court against your employer.

November 2017

# EXHIBIT D

E-Served: Apr 20 2018  4:56PM PST  Via Case Anywhere

## McRAE v. SP PLUS SECURITY SERVICES, INC.

## (1) <u>DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION</u>
## (2) <u>PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION</u>

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 20 2018

Sherri R. Carter, Executive Officer/Clerk
By: V. Jaime, Deputy

Date of Hearing: **April 18, 2018**
Department: 11
Case No.: BC550147

### RULING

Defendant's motion for summary adjudication is GRANTED as to Issues 2, 6, 10-11, 13, 15-18, 20-21, 23, 25, 28, and 31-32 and DENIED as to Issues 1, 3-5, 7-9, 12, 14, 19, 22, 24, 26-27, and 29-30.

Plaintiff's motion for summary adjudication is DENIED in its entirety.

### BACKGROUND

Plaintiff Lazarus M. McRae ("Plaintiff") originally filed a wage and hour class action[1] and PAGA representative action on behalf of himself and non-exempt Security Officers employed by Defendant SP Plus Security Services, Inc. ("Defendant").

The operative complaint—the Second Amended Complaint ("SAC") filed on 1/8/16—asserts the following causes of action:

- Failure to reimburse business expenses
- Failure to pay straight and overtime compensation
- Failure to pay wages of terminated or resigned employees
- Failure to provide rest periods
- Illegal record keeping
- Violations of unfair competition law
- Violation of Investigative Consumer Reporting Agencies Act
- Failure to pay all wages pursuant to contract
- Violation of Private Attorneys General Act
- Failure to provide meal periods

---

[1]      The Court subsequently denied Plaintiff's motion for class certification. See 7/6/17 Ruling Re: Motion for Class Certification.

1

Before the Court are the parties' respective motions for summary adjudication.

APPLICABLE LAW

CCP §437c, subdivision (f)(1) provides:

> A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or one or more issues of duty, if the party contends that the cause of action has no merit, that there is no affirmative defense to the cause of action, that there is no merit to an affirmative defense as to any cause of action, that there is no merit to a claim for damages, as specified in Section 3294 of the Civil Code, or that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs. A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty.

DISCUSSION

(1) DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION

Defendant moves for summary adjudication of thirty-two (32) issues.[2]

- **ISSUE 1:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay straight and overtime wages fails as a matter of law because the undisputed material facts establish that SP Plus had no actual or constructive knowledge of any alleged overtime work spent reviewing, signing, and submitting timesheets.**

  "Under California law, that an employer knew, *or should have known*, of overtime work exposes the employer to liability." See Williams v. Superior Court (2013) 221 Cal.App.4th 1353, 1369, as modified (Dec. 24, 2013) (italics supplied).

  Here, Plaintiff has raised a triable issue of fact as to whether Defendant should have known that Security Officers reviewed, signed, and submitted timesheets on their own time. Plaintiff points to the "Addendum to the SP Plus Security Services (California) Employee Handbook," which states in part: "Every other Friday, on Pay Day, along with your paycheck and or paycheck stub, you will receive a 'Time Sheet' . . . You are to review the time sheet and read the disclosure. You are to

---

2       See Notice of Motion, pp. 1-5.

sign the time sheet and submit it to the Corporate Office . . . ."  See Favarote Declaration, Exhibit B-24.  The trier of fact could reasonably conclude from the fact that Defendant mails timesheets to Security Officers' homes (as opposed to their work locations) and instructs them to sign and submit the timesheets to the Corporate Office, that Security Officers reviewed, signed, and submitted timesheets on their own time.  Defendant's own evidence regarding the methods by which Security Officers are permitted to submit their timesheets also supports such a conclusion.  See Defendant's UMF No. 6.  One method is for Security Officers to "go to [their] immediate local branch and deliver [their] time sheet," which suggests that, in that instance, Security Officers are not at their posts and therefore off-the-clock.

The motion for summary adjudication of Issue 1 is DENIED.

- **ISSUE 2:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay straight and overtime wages fails as a matter of law because the undisputed material facts establish that even assuming *arguendo* that Plaintiff did work overtime reviewing, signing and submitting timesheets for which he was not paid, the amount is *de minimis* and therefore not recoverable.**

Defendant presents evidence that Plaintiff spent 10 minutes reviewing his timesheets [Defendant's UMF No. 14], and other Security Officers spent even lesser time reviewing their timesheets [Defendant's UMF No. 15].  Citing to the *de minimis* doctrine, Defendant contends that the negligible amount of overtime spent by Security Officers reviewing, signing, and submitting timesheets is not recoverable.  See Motion, §III.D.3.

In opposition, Plaintiff does not dispute Defendant's evidence regarding the amount of time he and other Security Officers spent reviewing their timesheets. While Plaintiff states that Defendant's UMF Nos. 14 and 15 are "[d]isputed," Plaintiff simply argues that: (1) the *de minimis* "affirmative defense" is codified in the Code of Federal Regulations and is not available to Defendant to defend against Plaintiff's state claim; (2) Defendant cannot raise the *de minimis* "affirmative defense" as it failed to plead it in its answers; and (3) the issue of the applicability of the *de minimis* doctrine is currently under review by the California Supreme Court.  See Plaintiff's Responses to Defendant's UMF Nos. 14 and 15.

3

Rather than await the California Supreme Court's decision of the question certified for review in Troester v. Starbucks Corporation (9th Cir. 2016) 680 Fed.Appx. 511,[3] the Court will follow Gomez v. Lincare, Inc. (2009) 173 Cal.App.4th 508, which applied the *de minimis* doctrine in state court.

In Gomez, the plaintiffs argued that the defendant should be required to pay them for time spent telephonically resolving customer issues. See Gomez, *supra*, 173 Cal.App.4th at 527. In response, the defendant argued that such time was *de minimis*. Id. In determining whether the time was *de minimis*, the Court of Appeal considered "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." Id. (citing to Lindow v. United States (9th Cir.1984) 738 F.2d 1057, 1063). Finding that both sides' calculation of the average uncompensated hours[4] exceeded a *de minimis* amount, the Court of Appeal reversed the trial court's order granting the defendant's motion for summary adjudication.

The Lindow factors are present here. First, recording of time Security Officers spend at home reviewing, signing, and submitting timesheets poses a practical administrative burden on Defendant. Second, the amount of time at issue is 10 minutes or less. "Though there is 'no precise amount of time' that courts have labeled *de minimis* per se, '[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable.'" See Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership (9th Cir. 2016) 821 F.3d 1069, 1082. And, unlike the "daily periods" of *de minimis* time referenced in Corbin, the time at issue here is far less. At most, Defendant mailed timesheets every two weeks. See Defendant's UMF No. 5. Thus, the ten minute interval would occur only every two weeks. Third, while there is evidence that the practice exists (i.e., that some Security Officers review, sign, and submit timesheets on their own time), there is no evidence of its "regularity."

Finally, Defendant need not plead the *de minimis* doctrine as an affirmative defense. The Ninth Circuit Court of Appeals has rejected a similar argument, explaining: "[T]he United States Supreme Court refers to the *de minimis* doctrine

---

3       The exact question certified by the Ninth Circuit Court of Appeals is: "Does the federal Fair Labor Standards Act's *de minimis* doctrine, as stated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) and *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984), apply to claims for unpaid wages under the California Labor Code sections 510, 1194, and 1197?" See Troester, *supra*, 680 Fed.Appx. at 512.

4       The defendant in Gomez calculated hours spent by the plaintiffs to be between two to six hours per week, while the plaintiffs calculated them to be between six and nine hours per week. See Gomez, *supra*, 173 Cal.App.4th 527.

as a 'rule' and does not suggest that it must be affirmatively pleaded by a defendant before being properly applied by a court.  We have followed the Supreme Court's lead, similarly referring to the *de minimis* doctrine as a 'rule' or '[d]octrine' and not as an affirmative defense."  See Corbin, *supra*, 821 F.3d 1069, 1080.

For these reasons, the motion for summary adjudication of Issue 2 is GRANTED.  The Court notes, however, that in the event that the California Supreme Court decides Troester and concludes that the *de minimis* doctrine is inapplicable in state court, the Court will entertain a later motion for reconsideration.

- **ISSUE 3:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay straight and overtime wages for reviewing, signing and submitting timesheets fails as a matter of law because Plaintiff has not identified other aggrieved employees.**

Defendant presents evidence that Plaintiff worked as a Security Officer at the 1055 West Seventh Street location in Los Angeles plus three special events [Defendant's UMF No. 17], and that Plaintiff admitted that he never asked other Security Officers whether they reviewed their time sheets at home [Defendant's UMF No. 18].

However, Defendant's own evidence (which it incorporates by reference into Issue 3) [Defendant's UMF No. 16] shows the existence of other aggrieved employees [Defendant's UMF No. 15].  For example, Octavio Prado states: "At SP Plus we received our timecards in the mail and I would review them at home." See Prado Declaration (attached to Winfield Declaration as Exhibit H), ¶15; see also Rios Declaration (attached to Winfield Declaration as Exhibit J), ¶11 ("I received my SP Plus timecards in the mail and reviewed them at home."); Ibarra Declaration (attached to Winfield Declaration as Exhibit K), ¶20 ("I regularly received pay stubs from SP Plus and I would sometimes review them when I received them.  We also received our timecards with our paystubs to sign . . . .").

The motion for summary adjudication of Issue 3 is DENIED.

- **ISSUE 4:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay straight and overtime wages for reviewing, signing and submitting time sheets fails as a matter of law because Plaintiffs PAGA claim cannot be resolved on a**

5

**representative basis as it necessitates a multitude of highly-individualized inquiries making this claim unmanageable.**

As Defendant recognizes, PAGA plaintiffs need not satisfy class action requirements. See Motion, §III.J (citing to Arias v. Superior Court (2009) 46 Cal.4th 969). Yet, Defendant seeks to engraft a manageability requirement onto Plaintiff's PAGA claim.

Arias is clear: "[Class action] requirements need not be met when an employee's representative action against an employer is seeking civil penalties under the Labor Code Private Attorneys General Act of 2004 (Lab.Code, § 2698 et seq.)." See Arias, supra, 46 Cal.4th at 975. Given this binding authority, the Court will not follow the federal district court decisions[5] cited by Defendant dismissing/striking unmanageable PAGA claims. "Federal decisions are, of course, not controlling on matters of state law." See 9 Witkin, Cal. Proc. (5th ed. 2008) Appeal §507.

The motion for summary adjudication of Issue 4 is DENIED.

- **ISSUE 5:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay straight and overtime wages fails as a matter of law because the undisputed material facts establish that SP Plus had no actual or constructive knowledge of any alleged overtime work spent donning and doffing off-the-clock.**

  Plaintiff has raised a triable issue of fact as to whether Defendant should have known that Security Officers donned and doffed off-the-clock. For example, Plaintiff points to Defendant's policy in its "California Employee Handbook – Hourly Employees" stating that "[u]niforms must not be worn at any time or for any purpose other than while on duty at an assigned post and travel to and from work." See Plaintiff's Response to Defendant's UMF No. 27. Additionally, Defendant's PMQ, Rafaela Ramirez, testified that Defendant expected that "[w]hen [Security Officers] clock in, they have to be in uniform." Id. Based on this evidence, the trier of fact could reasonably conclude that Defendant should have known that Security Officers had to don and doff on their own time.

  The motion for summary adjudication of Issue 5 is DENIED.

---

[5]     Ortiz v. CVS Caremark Corporation (N.D. Cal., Mar. 19, 2014, No. C-12-05859 EDL) 2014 WL 1117614, at *3 to *4; Bowers v. First Student, Inc., (C.D. Cal., Apr. 23, 2015, No. 2:14-CV-8866-ODW EX) 2015 WL 1862914, at *4.

6

- **ISSUE 6:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay straight and overtime wages fails as a matter of law because the undisputed material facts establish that even assuming arguendo that Plaintiff did work overtime donning and doffing off-the-clock for which he was not paid, the amount is *de minimis* and therefore not recoverable.**

  Defendant presents evidence that it took Plaintiff 5 or 6 minutes to get dressed [Defendant's UMF No. 33], and some Security Officers already wear everything except their top shirt, which takes less than two minutes to put on once at work [Defendant's UMF No. 34].

  For the same reasons as Issue 2, the motion for summary adjudication of Issue 6 is GRANTED.

- **ISSUE 7:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay straight and overtime wages for donning and doffing off-the-clock fails as a matter of law because Plaintiff has not identified other aggrieved employees.**

  Defendant presents evidence that Plaintiff worked as a Security Officer at the 1055 West Seventh Street location in Los Angeles plus three special events [Defendant's UMF No. 36], and that Plaintiff admitted that he does not know if other Security Officers wore their uniforms to work covered up with a jacket [Defendant's UMF No. 37].

  Similar to Issue 3, Defendant's own evidence (which it incorporates by reference into Issue 7) [Defendant's UMF No. 35] shows the existence of other aggrieved employees [Defendant's UMF No. 34]. One of Defendant's declarants, Bruno Aguirre, states: "I drive to work. I know we are not supposed to wear our uniforms when we are off-duty or on breaks so I put my uniform shirt on once I get to work." See Aguirre Declaration (attached to Winfield Declaration as Exhibit I), ¶7.[6]

  The motion for summary adjudication of Issue 7 is DENIED.

///
///
///

---

[6]     See also Rios Declaration (attached to Winfield Declaration as Exhibit J), ¶10 ("I drive to work and put my uniform shirt on after I arrive but before I clock in.").

- **ISSUE 8:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay straight and overtime wages for donning and doffing off-the-clock fails as a matter of law because Plaintiffs PAGA claim cannot be resolved on a representative basis as it necessitates a multitude of highly-individualized inquiries making this claim unmanageable.**

  For the same reason as Issue 4, the motion for summary adjudication of Issue 8 is DENIED.

- **ISSUE 9:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to reimburse business expenses fails as a matter of law because the undisputed material facts establish that SP Plus does not require Security Officers to return dry-cleaned uniforms at the conclusion of their employment.**

  Plaintiff has raised a triable issue of fact as to whether Defendant required Security Officers to return their uniforms dry-cleaned at the end of their employment. Specifically, Defendant issued a memorandum stating that Security Officers "will be subject to an automatic $25.00 deduction fee on [their] final pay check for any uniforms not returned dry cleaned." See Plaintiff's Response to Defendant's UMF No. 43. And while Defendant's PMQ disclaimed the practice of deducting a $25 fee for non-dry-cleaned uniforms [Defendant's UMF No. 43], she testified that she does not remember telling Security Officers that they need not return their uniforms dry-cleaned, and that "people have brought their uniforms back dry cleaned" [Plaintiff's Response to Defendant's UMF No. 43].

  The motion for summary adjudication of Issue 9 is DENIED.

- **ISSUE 10:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to reimburse business expenses fails as a matter of law because SP Plus paid Security Officers a uniform allowance for the necessary costs to maintain their uniforms.**

  Defendant presents evidence that its "Uniform Allowance Agreement" provides for a weekly allowance of 20¢ per hour[7] for the maintenance of uniforms. See

---

[7]     This equates to $8 for 40 hours worked. See also "Uniform Allowance Agreement" ("Note: This allowance shall give rise to a maximum weekly allowance of Eight Dollars ($8.00) for forty hours worked, which is the allowance required by law.").

8

Defendant's UMF No. 51. According to Defendant, this stipend was more than sufficient to allow an employee to dry-clean their uniform at the conclusion of their employment.

Plaintiff counters, however, that the $8.00 weekly allowance for maintenance of uniforms was insufficient to cover the end-of-employment dry-cleaning of uniforms referenced in Defendant's 1/21/09 memorandum regarding "Uniform Care." Specifically, Plaintiff states that "[t]hat $8.00 did not even cover the costs of the coin laundry machines that [he] had to use[8] or the costs of the specific detergent that the Company recommended [employees] use for the care of their uniforms so that they did not fade too quickly." See 4/18/16 McRae Declaration, ¶11 (McRae Deposition Exhibit 15).

The problem with this declaration, however, is that Plaintiff fails to allege that the particular economic challenges that he faced were shared by any other allegedly aggrieved employee. This lack of a shared or common injury – one that was experienced not simply by Plaintiff as an individual employee, but also by other employees that he seeks to represent – is fatal to a PAGA claim.

The motion for summary adjudication of Issue 10 is GRANTED.

- **ISSUE 11:**

  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to reimburse business expenses fails as a matter of law because Plaintiff cannot show his uniform maintenance costs were necessary expenditures.**

  "In calculating the reimbursement amount due under section 2802, the employer may consider not only the actual expenses that the employee incurred, but also whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices." See Gattuso v. Harte-Hanks Shoppers, Inc. (2007) 42 Cal.4th 554, 568.

  Defendant presents evidence that the uniforms it provided to Security Officers were machine-washable and did not need to be dry-cleaned. See Defendant's UMF No. 58. Because of this, it appears to be Defendant's position that Plaintiff's individual decision to dry-clean his uniforms twice a month [Defendant's UMF No. 60] was unreasonable.

---

[8] In FN2 of its reply, Defendant notes that, based on Plaintiff's deposition testimony, Plaintiff's washing ($1.50 per load) and drying ($1.75 per load) costs could amount to a maximum of $19.50 per week.

9

Again, Plaintiff seeks to raise a triable issue as to whether his uniform maintenance costs were necessary based on his own personal experiences. At his deposition, Plaintiff acknowledged that uniform maintenance are highly irregular among employees and largely "[d]epends on the uniform," which varied with the assignment. According to Plaintiff, he sometimes had to wear a blazer, which he "had to dry clean . . . at least twice a month." See McRae Depo., 33:2-18.

Once again, Plaintiff seeks to convert his individual experience into a representative claim without any evidence that any other employees shared his experience. As PAGA is a representative action, a triable representative issue must be provided. Absent such evidence, summary adjudication is appropriate.

The motion for summary adjudication of Issue 11 is GRANTED.

- **ISSUE 12:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to reimburse business expenses fails as a matter of law because the undisputed material facts establish that SP Plus did not deduct uniform expenses from Security Officers' paychecks.**

  Defendant presents undisputed evidence that it never took deductions from any Security Officer's final pay for returning uniforms that were not dry-cleaned. See Defendant's UMF Nos. 46, 63; Plaintiff's Response to Defendant's UMF No. 46.

  However, Plaintiff's reimbursement theory is not based on Defendant's deduction of $25 from Security Officers' final pay for returning non-dry-cleaned uniforms; rather, it is based on Defendant's failure to reimburse end-of-employment dry cleaning costs incurred by Security Officers who turned in their uniforms already dry-cleaned. See Opposition, §III.C.

  The motion for summary adjudication of Issue 12 is DENIED.

- **ISSUE 13:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to reimburse business expenses fails as a matter of law because Plaintiff has not identified other aggrieved employees.**

  In support of summary adjudication of this issue, Defendant incorporates by reference its UMF Nos. 42-62 and cites to Plaintiff's deposition testimony that he

10

"can't remember whether [he] went out of [his] way to ask somebody" if they had to pay $25 for returning non-dry-cleaned uniforms.

The problem with much of Plaintiff's claimed "triable facts" relates not to the security guard aggrieved employee group he seeks to represent, but rather his own experience. Unlike the time card review or the "donning and doffing" issues discussed above, plaintiff presents no evidence that his individual experiences were shared or experienced by any other "aggrieved" employees. Plaintiff cannot pursue a representative action when there is no evidence of a common complaint or violation. Plaintiff's individual maintenance costs and his actual reimbursements do not create a triable issue of material fact as to the experiences of any group of employees for which he seeks representative status. For example, Defendant's PMQ testified that some Security Officers returned their uniforms dirty and others returned them clean. There is no evidence presented here that employees — as a whole or even as part of the whole -- believed that they were required to incur unreimbursed expenses to dry-clean their uniforms at the conclusion of their employment and/or that these expenses were not fully covered by the $8 maximum weekly allowance given to them for uniform maintenance. Idiosyncratic complaints by a single employee are not properly adjudicated using PAGA. Instead, those individual issues can be prosecuted fully as individual claims under the Labor Code.

The motion for summary adjudication of Issue 13 is GRANTED.

- **ISSUE 14:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to reimburse business expenses fails as a matter of law because Plaintiffs PAGA claim cannot be resolved on a representative basis as it necessitates a multitude of highly-individualized inquiries making this claim unmanageable.**

  For the same reason as Issue 4, the motion for summary adjudication of Issue 14 is DENIED.

- **ISSUE 15:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to provide rest breaks fails as a matter of law because the undisputed material facts establish that SP Plus authorized, permitted, and afforded Plaintiff an opportunity to take legally-compliant rest breaks.**

11

Defendant presents evidence that its rest break policies provided Security Officers with 10-minute rest breaks for every four hours worked, or major fraction thereof, and also provided "make-up breaks" in the event of interruptions. See Defendant's UMF Nos. 79-84. Defendant also presents evidence that Security Officers received their rest breaks and used them for personal activities. See Defendant's UMF No. 86.

In an attempt to raise a triable issue of material fact, Plaintiff presents evidence that Security Officers are instructed to "always monitor" their radios and to have the radios turned on and with them "at all times." See Plaintiff's Response to Defendant's UMF Nos. 82-84. It is Plaintiff's position that Security Officers did not receive legally-compliant rest breaks pursuant to Augustus v. ABM Security Services, Inc. (2016) 2 Cal.5th 257, which concluded that California law requires employers to "relinquish any control over how employees spend their break time, and relieve their employees of all duties—*including the obligation that an employee remain on call.*" See Augustus, *supra*, 2 Cal.5th at 273 (italics supplied).

However, as will be discussed in Issues 16 and 17, the Court will not retroactively apply Augustus. Without the benefit of Augustus, evidence of a mere policy and practice of having Security Officers "always monitor" their radios (as opposed to evidence of Security Officers actually responding to calls on their radios), Plaintiff has not raised a triable issue of material fact as to the aggrieved employee group he seeks to represent.   As with the unreimbursed business expense issue, Plaintiff's only evidence that he was ever required to perform work functions during rest breaks is not corroborated by any other employee. There are no other declarations from any other employees that they were required to do anything more than to be "on call" (i.e. have their radios with them and turned on) during their rest break. Given that this kind of "on call" requirement was not considered unlawful during the relevant PAGA period (in the absence of the retroactive application of Augustus), Plaintiff cannot raise a triable issue of fact as to his representative claim.

Nor does Plaintiff's statement that "there were times while [he] was on [his] rest break and [his] meal period that [he] would get calls which [he] was obligated to respond to, such as elevator entrapments" create a triable issue on individual liability for rest break violations. See 4/27/17 McRae Declaration in Support of Plaintiff's Motion for Class Certification (attached to Plaintiff's Appendix of Evidence as Exhibit E), ¶11.   His declaration impermissibly merges the requirements imposed during meal breaks (which are unpaid periods of work) from rest breaks (which are paid periods and for which – at least until Augustus –

12

the legal requirements were different).  By impermissibly merging these two concepts, the Court is unable to discern whether a triable issue of fact exists as to whether he was required to perform work – to be on duty, not simply on call – during only his rest breaks.  Without competent evidence on this issue, no triable issue is created.

He also states that even though his Daily Activity Reports reflect that he took rest breaks, "[he] was instructed by [his] superiors that [he] needed to fill out the DAR form and write down rest break times or [he] would be disciplined, so [he] wrote down fake rest break times, even though [he] was still on-call or on-duty."  Id., ¶12.  Once again, this statement fails to create a triable issue as it merges the notion of "on-call" and "on-duty."  The former was permissible during rest breaks before Augustus; the latter was not.  Without a distinction between the two, this statement does not create a legally justiciable controversy as to Plaintiff's individual claim for rest break violations.

The motion for summary adjudication of Issue 15 is GRANTED.

- **ISSUE 16:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to provide rest breaks fails as a matter of law because SP Plus provided legally-compliant rest breaks pre-*Augustus* and the *Augustus* court's interpretation of the law governing rest breaks should not be applied retroactively.**

"Unlike statutes, which normally operat[e] prospectively absent an express legislative direction, judicial decisions are generally given retroactive effect."  See Lazarin v. Superior Court (2010) 188 Cal.App.4th 1560, 1580.  "There is, however, no absolute rule of retroactivity. ' " '[C]onsiderations of fairness and public policy may require that a decision be given only prospective application.  Particular considerations relevant to the retroactivity determination include the reasonableness of the parties' reliance on the former rule, the nature of the change as substantive or procedural, retroactivity's effect on the administration of justice, and the purposes to be served by the new rule.' " '  Any such exception to the general rule of retroactivity, however, is justified only 'when considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule.' "  Id. at 1581.

Upon further consideration of the parties' papers and oral arguments, the Court is persuaded that Augustus should not be applied retroactively.

13

Defendant's reliance on the pre-Augustus rule was reasonable.  As noted by the dissent in Augustus, pre-Augustus cases and the Division of Labor Standards Enforcement ("DLSE") distinguished between simply being on-call (i.e., "remain[ing] reachable (by portable communications device or otherwise") and working.

For example, in Mendiola v. CPS Sec. Solutions, Inc. (2015) 60 Cal.4th 833, the California Supreme Court stated that "*[i]t is well-established* that an employee's on-call or standby time *may* require compensation," and "California courts considering whether on-call time constitutes hours worked have primarily focused on the extent of the employer's control."  See Mendiola, *supra*, 60 Cal.4th at 840 (italics supplied) (citing to e.g., Ghazaryan v. Diva Limousine, Ltd. (2008) 169 Cal.App.4th 1524, 1535); Bono Enterprises, Inc. v. Bradshaw (1995) 32 Cal.App.4th 968, 974–975, disapproved on other grounds in Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 573–574).  Applying the factors bearing on employer control,[9] the California Supreme Court concluded that the on-call hours of the security guard plaintiffs represented hours worked for purposes of the relevant IWC Wage Order because the security guards: were required to reside in on-site trailers; were required to "respond, immediately and in uniform, if they were contacted by a dispatcher or became aware of suspicious activity;" were unable to easily trade on-call responsibilities; "had to report where they were going, were subject to recall, and could be no more than 30 minutes away from the site;" and spent their time primarily for the benefit of the defendant."  Id. at 841.

Similarly, the DLSE, the agency in charge of enforcing wage and hour laws, distinguished between the situation where a security guard is merely required to carry (as opposed to respond to) a pager.  According to the DLSE, "[o]ne should not leap to the conclusion that based on the Division policy regarding meal periods that the mere fact that one is required to wear a pager per se indicates that all such time is 'work time' and, therefore, compensable."  See 1/28/92 DLSE Opinion Letter Re: Use of Beepers (attached to Defendant's RJN as Exhibit 5), p.2.  It further stated:

---

[9]     Those factors include:  "(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time."  See Mendiola, *supra*, 60 Cal.4th at 841.  "Courts have also taken into account whether the "[o]n-call waiting time ... is spent primarily for the benefit of the employer and its business."  Id.

14

> So long as the employee who is simply required to wear the pager is not called upon during the meal period to respond, there is no requirement that the meal period be paid for.  On the other hand, if the employee responds, as required, to a pager call during the meal period, the whole of the meal period must be compensated.[10]

Defendant also points out (and Plaintiff fails to refute) that no other court (trial or appellate) has sided with the interpretation of Labor Code §226.7 in Augustus, and that the only case in which this issue was addressed was in the federal district court opinion Temple v. Guardsmark LLC (N.D. Cal., Feb. 22, 2011, No. C 09-02124 SI) 2011 WL 723611.  There, the district court denied class certification of the rest period class because although the parties "agree[d] generally on what California law requires ('on call' rest period is acceptable, 'on duty' is not)," they "disagree[d] about what [the] defendant actually permits," and thus, "the primary questions will be factual."  See Temple, supra, 2011 WL 723611, at *6.

Further, as Defendant correctly contends, not only is the change in the law substantive, it is also significant.  In the words of Plaintiff's own attorneys: "No one could have foreseen that not only would this case be reviewed by the Court of Appeal, but that it would also go up to the California Supreme Court where a stunning landmark decision was rendered that not only reversed the Court of Appeal, but reinstated the trial court judgment.  See Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (attached to Defendant's RJN as Exhibit 4), p.13.

Under these particular set of circumstances (and for additional reasons set forth in Issue 17, below), the Court declines to apply Augustus retroactively.  Where, as here, a penalty is imposed on an employer for failure to comply with the law, it cannot be said that such uncertainty is not a complete defense.

The motion for summary adjudication of Issue 16 is GRANTED.

- **ISSUE 17:**
**Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to provide rest breaks fails as a matter of law because SP Plus provided legally-compliant rest breaks pre-*Augustus* and retroactive application of the *Augustus* decision violates due process.**

---

[10]     See 1/28/92 DLSE Opinion Letter Re: Use of Beepers (attached to Defendant's RJN as Exhibit 5), p.3.

15

Quoting <u>Olszewski v. Scripps Health</u> (2003) 30 Cal.4th 798, 829, Defendant contends that "retroactive application of a decision disapproving prior authority on which a person may reasonably rely in determining what conduct will subject the person to penalties, denies due process."

As discussed above in Issue 16, Defendant's reliance on the longstanding, preexisting state of the law was reasonable based on case law and the DLSE opinion distinguishing between being on-call and being actually on-duty.

Further, it is undisputed that Defendant's security division ceased to exist after its sale to Universal Protection Services in August 2015, and Defendant has not employed any security officers since that time. See Defendant's UMF No. 88; see Plaintiff's Response to Defendant's UMF No. 88. Based on these facts, retroactive application of the new pronouncement of the law in <u>Augustus</u>, issued much later on December 22, 2016, is especially unfair to Defendant.

The motion for summary adjudication of Issue 17 is GRANTED.

- **ISSUE 18:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to provide rest breaks fails as a matter of law because Plaintiff has not identified other aggrieved employees.**

  Given the Court's ruling on the motion for summary adjudication of Issues 16 and 17 declining application of <u>Augustus</u>, Defendant's policy and practice to have Security Officers with radios "always monitor" their radios while on-duty, is insufficient to raise a triable issue of fact. That policy and practice says nothing about whether Security Officers actually responded to calls on their radios during their rest breaks.

  The motion for summary adjudication of Issue 18 is GRANTED.

- **ISSUE 19:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to provide rest breaks fails as a matter of law because Plaintiffs PAGA claim cannot be resolved on a representative basis as it necessitates a multitude of highly-individualized inquiries making this claim unmanageable.**

  For the same reason as Issue 4, the motion for summary adjudication of Issue 19 is DENIED.

16

- **ISSUE 20:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to maintain compliant wage statements fails as a matter of law because SP Plus' wage statements contained all the information required by Labor Code section 226(a).**

  Defendant proffers copies of Plaintiff's wage statements, which, it contends, contains all of the information required by Labor Code §226(a).[11]  See Defendant's UMF Nos. 114-115.

  As the claims for straight and overtime pay based on time spent reviewing, signing, and submitting timesheets and "donning and doffing," unpaid business expenses, and unpaid rest breaks have not survived summary adjudication, there is no underlying wage and hour claim to support a wage statement violation.

  The motion for summary adjudication of Issue 20 is GRANTED.

- **ISSUE 21:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to maintain compliant wage statements fails as a matter of law because Plaintiff failed to establish the underlying wage and hour violations.**

  Again, as the claims for straight and overtime pay based on time spent reviewing, signing, and submitting timesheets and "donning and doffing," unpaid business expenses, and unpaid rest breaks have not survived summary adjudication, there is no underlying wage and hour claim to support a wage statement violation.

---

[11]      That statute provides in relevant part: "An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ."

The motion for summary adjudication of Issue 21 is GRANTED.

- **ISSUE 22:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to maintain compliant wage statements fails as a matter of law because any failure to comply by SP Plus was not knowing or intentional.**

  Defendant argues that an employer is not liable for a violation of Labor Code §226(a) unless "[a]n employee suffer[s] injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)."

  The same argument has been expressly rejected in <u>Lopez v. Friant & Associates, LLC</u> (2017) 15 Cal.App.5th 773, <u>review denied (Jan. 10, 2018)</u>. The Court of Appeal stated: "Consistent with the PAGA statutory framework and the plain language and legislative history of section 226(e), we hold a plaintiff seeking civil penalties under PAGA for a violation of section 226(a) does not have to satisfy the 'injury' and 'knowing and intentional' requirements of section 226(e)(1). [Defendant's] motion for summary judgment should have been denied."

  As the requirements of Labor Code §226(e)(1) do not apply to Plaintiff's PAGA claim, the motion for summary adjudication of Issue 22 is DENIED.

- **ISSUE 23:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to maintain compliant wage statements fails as a matter of law because Plaintiff has not identified other aggrieved employees.**

  Defendant presents evidence that Security Officers received pay stubs that appeared to accurately reflect all hours worked [Defendant's UMF No. 121], and that Plaintiff testified that he was unaware of other Security Guards having issues with their pay stubs [Defendant's UMF No. 122].

  Plaintiff has not raised a triable issue in this regard. First, citing to his allegations in his Second Amended Complaint, "Plaintiff contends that the information provided on the statement is not correct and is inaccurate." See Plaintiff's Response to UMF No. 121. "It is generally understood, for instance, that a party cannot rely on the allegations of his own pleadings, even if verified, to make or supplement the evidentiary showing required in the summary judgment context." See <u>College Hospital Inc. v. Superior Court</u> (1994) 8 Cal.4th 704, 720, FN7, <u>as modified (Nov. 23, 1994)</u>. Second, given the Court's ruling on the motion for

18

summary adjudication of Issues 16 and 17 declining application of <u>Augustus</u>, it is insufficient for Plaintiff to point to Defendant's policy and practice to have Security Officers with radios "always monitor" their radios while on their rest breaks. Instead, Plaintiff must present evidence that other Security Officers actually responded to calls on their radios during their rest breaks. However, Plaintiff has not done that, and in fact, does not dispute that he testified that he was unaware of other Security Guards having issues with their pay stubs. See Plaintiff's Response to Defendant's UMF No. 122.

The motion for summary adjudication of Issue 23 is GRANTED.

- **ISSUE 24:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to maintain compliant wage statements fails as a matter of law because Plaintiffs PAGA claim cannot be resolved on a representative basis as it necessitates a multitude of highly individualized inquiries making this claim unmanageable.**

  For the same reason as Issue 4, the motion for summary adjudication of Issue 24 is DENIED.

- **ISSUE 25:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay all wages upon termination fails as a matter of law because Plaintiff failed to establish the underlying wage and hour violations.**

  Again, as the claims for overtime based on time spent reviewing, signing, and submitting timesheets and "donning and doffing," unpaid business expenses, and unpaid rest breaks have not survived summary adjudication, there is no underlying wage and hour claim to support a claim for failure to pay all wages upon termination.

  The motion for summary adjudication of Issue 25 is GRANTED.

- **ISSUE 26:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay all wages upon termination fails as a matter of law because SP Plus has a good faith dispute that any wages are due.**

  Defendant contends that the existence of a good faith dispute negates a finding of willfulness and precludes recovery of waiting time penalties under Labor Code

19

§203.  While this is a correct statement of the law,[12] Defendant confuses and conflates statutory penalties under Labor Code §203, and civil penalties under PAGA.  See Chin, et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2017) ¶ 17:762 ("PAGA applies only to civil penalties previously enforceable only by the State's labor law enforcement agencies. It does not affect or apply to actions for statutory penalties recoverable directly by employees (e.g., [Labor Code] § 203 'waiting time' penalties against employers who willfully fail to pay wages owed to terminated employees) (citing to Caliber Bodyworks, Inc. v. Superior Court (2005) 134 Cal.App.4th 365, 377[13]).

The motion for summary adjudication of Issue 26 is DENIED.

- **ISSUE 27:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay all wages upon termination fails as a matter of law because Plaintiff was timely paid all wages owed.**

  Pursuant to Labor Code §202(a), "[i]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

  Defendant presents evidence that Plaintiff's employment ended on July 9, 2014 [Defendant's UMF No. 129], and that Plaintiff's final paycheck is dated July 11, 2014 [Defendant's UMF No. 130].

---

[12]    See Amaral v. Cintas Corp. No. 2 (2008) 163 Cal.App.4th 1157, 1201 ("[A] good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203.") (quoting 8 Cal. Code Regs. §13520).

[13]    The Court of Appeal in Caliber Bodyworks stated that "[n]ot all statutory penalties are 'civil penalties' covered by [PAGA]."  See Caliber Bodyworks, supra, 134 Cal.App.4th at 377.  It continued: "[Defendant] fails to distinguish between a request for statutory penalties provided by the Labor Code for employer wage-and-hour violations, which were recoverable directly by employees well before the Act became part of the Labor Code, and a demand for 'civil penalties,' previously enforceable only by the State's labor law enforcement agencies. An example of the former is section 203, which obligates an employer that willfully fails to pay wages due an employee who is discharged or quits to pay the employee, in addition to the unpaid wages, a penalty equal to the employee's daily wages for each day, not exceeding 30 days, that the wages are unpaid."  Id.

20

There is a dispute as to whether "all wages owed" have been paid to Plaintiff (which, in turn, stems from a dispute regarding Defendant's liability to Plaintiff for unreimbursed expenses).

The motion for summary adjudication of Issue 27 is DENIED.

- **ISSUE 28:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay all wages upon termination fails as a matter of law because Plaintiff has not identified other aggrieved employees.**

As the claims for straight and overtime pay based on time spent reviewing, signing, and submitting timesheets and "donning and doffing," unpaid business expenses, and unpaid rest breaks have not survived summary adjudication, there are no aggrieved employees to whom Defendant failed to pay all wages upon termination.

The motion for summary adjudication of Issue 28 is GRANTED.

- **ISSUE 29:**
  **Plaintiff's Ninth Cause of Action for civil penalties under PAGA for failure to pay all wages upon termination fails as a matter of law because Plaintiff s PAGA claim cannot be resolved on a representative basis as it necessitates a multitude of highly-individualized inquiries making this claim unmanageable.**

For the same reason as Issue 4, the motion for summary adjudication of Issue 29 is DENIED.

- **ISSUE 30:**
  **The undisputed material facts establish that that SP Plus is entitled to summary adjudication on Plaintiff's individual claim for unpaid business expenses for the same reasons his PAGA claim fails.**

Plaintiff has created a triable issue as to his own individual experiences and expenditures regarding this uniform maintenance. While they do not support a representative action, they are sufficient to maintain an individual action.

The motion for summary adjudication of Issue 30 is DENIED.

///

21

EXHIBIT D, Page 39

- **ISSUE 31:**

  **The undisputed material facts establish that that SP Plus is entitled to summary adjudication on Plaintiff's individual claim for failure to pay straight and overtime wages for the same reasons his PAGA claim fails.**

  In light of the above rulings granting the motion for summary adjudication of Issues 2 and 6, summary adjudication of this issue (Issue 31) is likewise GRANTED.

- **ISSUE 32:**

  **The undisputed material facts establish that that SP Plus is entitled to summary adjudication on Plaintiff's individual claim for failure to provide rest breaks for the same reasons his PAGA claim fails.**

  In light of the above rulings granting the motion for summary adjudication of Issues 15-18, summary adjudication of this issue (Issue 32) is likewise GRANTED.

### (2) PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

Plaintiff moves for summary adjudication of the following three issues:[14]

- **ISSUE 1:**

  If SP Plus requires its Security Officers to take their work issued radio with them while on their rest break, monitor it, and remain on-duty, does SP Plus have a duty to provide its Security Officers with an extra hour of pay under Labor Code Section 226.7 each day that its Security Officers worked at least 3.5 hours under said conditions?

- **ISSUE 2:**

  If SP Plus mails timesheets to its Security Officers' home and requires those employees to review those timesheets, sign an attestment that s/he review the records, and a verification of the same, does SP Plus have a duty to pay its Security Officers for this time?

- **ISSUE 3:**

  If SP Plus requires its Security Officers to return their work uniform dry cleaned at the end of their employment, does SP Plus have a duty under Labor Code section 2802 to reimburse said employees for their costs in getting their uniform dry cleaned?

---

14      See Notice of Motion, p.1.

22

Plaintiff's motion is DENIED in its entirety.  The issues to be adjudicated are not issues of duty that may be adjudicated under CCP §437c(f)(1).  The Court agrees with Defendant that Plaintiff is really attempting to adjudicate Defendant's *liability*.  For example, despite how Plaintiff frames Issue 1 (see above), Plaintiff states:  "Accordingly, SP Plus did not fulfill its duty to provide work-free rest periods and as such is liable for one hour's pay for every shift of at least 3.5 hours worked by the Plaintiff and the other aggrieved Security Officers during the PAGA liability period."  See Motion, 14:4-6.  Since "[a] determination of liability alone does not completely dispose of [a] cause of action,"[15] Plaintiff had to, but did not, comply with the mandatory requirements of CCP §437c(t)(1)[16] to seek adjudication of Defendant's liability.

Defendant's wholesale objection to "every piece of evidence attached to the Declaration of Torey Joseph Favarote in Support of Plaintiff Lazarus McRae's Motion for Summary Adjudication" is OVERRULED.

Defendant's objections to portions of the Ramirez Deposition and Vasquez Deposition are OVERRULED.

Plaintiff's objection to Defendant's Request for Judicial Notice of the Department of Industrial Relations' website is OVERRULED.

CONCLUSION

In light of this ruling, the only issue that remains for trial is the plaintiff's individual action for reimbursement of business expenses.  The current trial estimates and trial schedule shall remain in full force and effect.

---

[15]    See Paramount Petroleum Corporation v. Superior Court (2014) 227 Cal.App.4th 226, 242.

[16]    That statute permits a party to move for summary adjudication of any legal issue or a claim for damages (other than a claim of punitive damages) even though such adjudication would not completely dispose of a cause of action, affirmative defense, or issue of duty, provided that certain specified conditions are met.